IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Civil Action 2:16-CV-____

| | |
|---|---|
| DONALD R. SMITH | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | :   **COMPLAINT** |
| | : |
| FASTENAL COMPANY, a Minnesota | : |
| Corporation | : |
|     Defendant. | : |

Plaintiff, Donald R. Smith ("plaintiff"), by and through counsel and pursuant to Fed.R.Civ.P 8 and the Americans with Disabilities Act, As Amended 42 U.S.C. §12101, et seq., ("ADAAA"), complaining against Fastenal Company ("defendant"), a Minnesota Corporation doing business within the State of North Carolina, alleges and says as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is a citizen and resident of Pasquotank County, North Carolina and at all times relevant herein, has been an "employee" within the meaning of 42 U.S.C. §12111(4).

2. At all times relevant herein, defendant has been a corporation organized and existing under the laws of Minnesota which transacts business in the State of North Carolina and maintains a place of business in Pasquotank County, North Carolina.

3. At all times relevant herein, defendant has been engaged in an industry affecting commerce, pursuant to 42 U.S.C. §12111(5)(A), including the business of providing industrial supplies, equipment and tools as well as repairs to tools and equipment.

4. At all times relevant herein, defendant has had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar

year, and therefore is an "employer" pursuant to 42 U.S.C. §12111(5)(A), with no applicable exception.

## JURISDICTION AND VENUE

5. By this action, plaintiff seeks to correct unlawful and discriminatory employment practices by defendant for which plaintiff seeks legal and equitable relief for violations of the ADAAA.

6. Plaintiff further seeks monetary relief, compensatory damages, attorney's fees and punitive damages pursuant to 42 U.S.C. §2000e-5g, 42 U.S.C. §12117, and as otherwise provided by law.

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 over claims arising under the Americans with Disabilities Act of 1990, as amended ("ADAAA") and codified in 42 U.S.C. §12101.

8. The Court has personal jurisdiction in this action over defendant pursuant to 42 U.S.C. §12101, et seq.

9. Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper in the United States District Court for the Eastern District of North Carolina, which is the district in which plaintiff resides and is also the district in which a substantial part of the employment practices giving rise to the claims alleged herein occurred.

## ADMINISTRATIVE REMEDIES

10. On or about April 8, 2015, and within 180 days of being subjected to defendant's discriminatory and retaliatory employment practices, as alleged herein, plaintiff filed a charge of discrimination (Charge No.: 437-2015-00513) with United States Equal Employment Opportunity Commission ("EEOC") alleging the same, pursuant to 42 U.S.C. § 12117(a) and 42

U.S.C. §2000e-5(e). A true copy of plaintiff's charge of discrimination to the EEOC, as alleged above, is attached hereto as Exhibit A and is incorporated herein by reference.

11. On June 15, 2016, the EEOC made a determination finding that plaintiff is a qualified individual with a disability; that defendant was aware of plaintiff's disability; that plaintiff was denied a reasonable accommodation and that plaintiff was discharged, in violation of the ADAAA. A true copy of the EEOC determination is attached hereto as Exhibit B and incorporated herein by reference.

12. On or about August 16, 2016, the EEOC issued a notice of suit rights to plaintiff indicating that his EEOC claim had been completely processed and that he was now being given the right to file suit. A true copy of the Right to Sue letter is attached hereto as Exhibit C and incorporated herein by reference. Plaintiff received this letter on or about August 18, 2016.

13. Within 90 days after having first received the referenced EEOC's Notice of Right to Sue, plaintiff filed this action for discrimination with the United States District Court, pursuant to 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5.

14. Pursuant to 42 U.S.C. §12117(a) and 42 U.S.C. §2000e-5, plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## **GENERAL ALLEGATIONS**

15. Plaintiff was employed by defendant from 2006 until March 2, 2015 when he was fired. At the time he was fired and for several years before that, plaintiff held the title of Inside Sales Manager.

16. Plaintiff's duties as Inside Sales Manager involved helping walk-in customers at the store; looking up information and placing orders called in by outside sales employees; answering phones and helping customers with call in orders; checking merchandise in the computer and

placing merchandise on the shelves; counting inventory; and performing various other clerical functions.

17. At all times during his employment, plaintiff was performing at a satisfactory level in his position, had adequately performed all assigned duties and met all of defendant's legitimate and reasonable expectations.

18. Before being fired, plaintiff was never written up, counseled, accused of stealing or any other form of dishonesty, or otherwise subject to any disciplinary action.

19. During his employment with defendant, plaintiff suffered a series of injuries. In October of 2010, plaintiff suffered an injury to his neck which required surgery. Plaintiff was out of work for several weeks following the surgery.

20. After returning to work in 2011 following his neck surgery, plaintiff broke his ankle while on the job. This injury resulted in another surgery involving the placement of pins in the ankle. Plaintiff was restricted to a wheelchair for several weeks following this accident. The surgery was not entirely successful, and resulted in a substantial impairment to plaintiff's ability to straighten his leg or to walk.

21. Plaintiff underwent another back surgery in 2013 resulting in lifting restrictions for 6 weeks as he recovered. In March 2014, plaintiff had a pain stimulator put in and was out of work for 6-8 weeks following that procedure.

22. Plaintiff has needed to use a walker or wheelchair to conduct daily activities, including work, since his ankle surgery in 2011.

23. From at least 2013 to the present, plaintiff has been unable to stand without support. Even with support, plaintiff has been unable to stand for more than 3 to 5 minutes. Plaintiff cannot walk farther than 20-25 feet even with the aid of a walker. However, plaintiff has always

been able to perform all of the duties of his position as Inside Sales Manager despite his disability and limitations. At all times, plaintiff's performance was satisfactory by all accounts. Plaintiff was never disciplined by defendant until defendant tired of allowing plaintiff to work using a wheelchair.

24. Plaintiff's supervisor, store manager John Lewis, and the prior district manager, Tom Lankford, were aware that plaintiff needed to sit in and use a wheelchair in order to work. Mr. Lewis and Mr. Lankford consistently tried to conceal the fact that plaintiff worked in a wheelchair in an effort to keep employees from defendant's corporate office from finding out that it was employing a disabled employee. For example, when the regional manager or someone else from the corporate office was known to be coming to visit the store, Mr. Lewis or Mr. Lankford told plaintiff to take the day off or was told to go sit and wait in his car until the corporate representatives were gone.

25. Sometime around the summer of 2014, a safety manager from the corporate office came to the store unannounced and saw plaintiff in a wheelchair.

26. In late 2014, Greg Youker became the District Manager and had certain responsibility over the store where plaintiff worked for defendant.

27. On or about January 23, 2015, Mr. Lewis told plaintiff that plaintiff could not work in a wheelchair, and that he had "to be 100% to keep [his] job." Mr. Lewis presented plaintiff with a document and said that if he could not get out of the wheelchair in 3 months he would have to fire plaintiff.

28. At the time Mr. Lewis told plaintiff that he could not work in a wheelchair, there was no job description setting forth any duties which plaintiff could not perform.

29. Mr. Lewis told plaintiff to sign the document stating that if he was not able to work without light duty, which Mr. Lewis said meant not being in a wheelchair, plaintiff would be fired. A true copy of this document is attached hereto as Exhibit D and incorporated herein by reference. Mr. Lewis also told plaintiff that if he did not sign the document attached hereto as Exhibit D he would be fired.

30. Plaintiff told Mr. Lewis that he would not be able to get out of the wheelchair in 3 months. Mr. Lewis told plaintiff "I have your back" and "if you are not out of the wheelchair in 3 months we will cross that bridge when we get to it." Based on Mr. Lewis' representations and pressure plaintiff signed the document attached hereto as Exhibit D.

31. Plaintiff was fully able to perform the duties given to him, and performed all required duties as he understood them. Mr. Lewis regularly left plaintiff in charge of the store. Plaintiff was never told there were any duties expected of him that he did not or could not perform.

32. On information and belief, defendant required plaintiff to sign Exhibit D in an effort to avoid having to provide plaintiff with a reasonable accommodation or to justify its action in firing him.

33. Plaintiff put together a plan showing how he would be a vital sales person in his market and gave it to Mr. Lewis. Plaintiff handed such plans to Mr. Lewis every month with ideas to grow their business. Sometimes Mr. Lewis would look at the plan and ball it up and throw it away.

34. On March 2, 2015, Mr. Lewis and Mr. Youker met with plaintiff and terminated plaintiff.

35. When he was fired, plaintiff still needed to use the wheelchair in order to work. On information and believe, Mr. Lewis and Mr. Youker knew when they decided to terminate

6

Case 2:16-cv-00077-BO   Document 1   Filed 11/14/16   Page 6 of 12

plaintiff that he would never be able to work without using a wheelchair. The stated reason for terminating plaintiff was that he had "left the store with inventory without paying for it." However, they could not identify any inventory which they contended plaintiff had taken, and refused to give any specific examples or details that plaintiff could discuss or respond to. Plaintiff was asked to sign an exit interview document which he refused to sign. A true copy of the document which defendant asked plaintiff, which included false information, is attached hereto as Exhibit E and incorporated herein by reference.

## **FIRST CLAIM FOR RELIEF**
(Disability Discrimination in Violation of ADAAA)

36. The foregoing allegations are hereby re-alleged and incorporated herein by reference.

37. At all times relevant hereto, defendant has been a covered entity within the meaning of 42 U.S.C. §12111(2).

38. At all times relevant herein, plaintiff has had a "disability" and been a qualified individual with a disability within the meaning of 42 U.S.C. §12101 in that plaintiff has had a physical or mental impairment that substantially limited one or more of the major life activities for plaintiff. Specifically, plaintiff was disabled from walking, standing, lifting, bending and working and needed to use a wheelchair in order to work. Plaintiff's disability prevents him from being able to walk for any distance beyond 20-25 feet.

39. At all times relevant herein, plaintiff's disabilities were well-known by plaintiff's coworkers, supervisors and various people within defendant's management and organizational structure.

40. Defendant wrongfully and intentionally discriminated against plaintiff because of his disabilities in violation of the ADAAA in at least the following ways:

    a. Engaging in continuous disparate treatment against plaintiff by trying to keep secret from certain corporate officials that defendant was disabled or that they were allowing a disabled individual to work for defendant;

    b. By requiring plaintiff to leave the store and go home for the day or to wait in his vehicle when defendant's employees knew that corporate officials may be coming to visit the store and might observe that plaintiff is disabled;

    c. By refusing to provide plaintiff with a reasonable accommodation, specifically allowing him to use his wheelchair at work, and insisting that he be able to work without using his wheelchair;

    d. By terminating plaintiff's employment because of plaintiff's inability to work without using a wheelchair, and in an effort to avoid having to provide plaintiff with any reasonable accommodation and/or in an effort to avoid having to employ a disabled individual; and

    e. In such other ways as may be proven at trial in this matter.

41. Defendant engaged in these discriminatory practices against plaintiff with either malice or reckless indifference to his federally-protected right to be free from disability-based discrimination in the workplace, as set forth in and protected by the ADAAA.

42. As a direct and proximate result of defendant's disparate treatment toward plaintiff, plaintiff has suffered actual harm, losses and damages in an amount to be proven at trial but in excess of $100,000.

43. Even if defendant did not have the specific discriminatory animus to discriminate against plaintiff, which is denied, defendant's adverse treatment and employment actions against plaintiff were caused or influenced by defendant's managers who were motivated by a

8

discriminatory animus that was intended to cause, and in fact did cause, defendant's adverse treatment and materially adverse actions toward plaintiff.

## SECOND CLAIM FOR RELIEF

(ADAAA – Refusal to Provide Reasonable Accommodations)

44. The foregoing allegations are hereby re-alleged and incorporated herein by reference.

45. When he became disabled, plaintiff was entitled to reasonable accommodations from defendant concerning his disabilities as alleged herein.

46. Allowing plaintiff to work while using a wheelchair was a reasonable accommodation at all times. Plaintiff was fully capable of performing all of the regular duties and essential functions of his job while using a wheelchair.

47. Defendant decided to cease providing plaintiff with an accommodation for his disability by telling him that he could no longer work in a wheelchair and ordering that he become able to work without using a wheelchair.

48. Defendant realized that its orders to plaintiff were unreasonable, unnecessary, and contrary to defendant's duty to allow plaintiff reasonable accommodations as necessary to perform his job. Defendant also knew plaintiff would not be able to continue working without using a wheelchair. Accordingly, on information and belief, defendant decided to fire plaintiff from his position on March 2, 2015 so it would not employ a disabled individual.

49. As a result of defendant's refusal to provide plaintiff with reasonable accommodations or otherwise engage in the interactive process required by the ADAAA, plaintiff's rights under the ADAAA were violated.

9

50. The reasonable accommodations that plaintiff needed from defendant and that were easily available to the parties would not have imposed any undue hardship on the operation of defendant's business.

51. As a direct and proximate result of defendant's failure to provide reasonable accommodations to plaintiff, as alleged herein, plaintiff has suffered damages in an amount to be proven at trial, but in excess of $100,000.

### THIRD CLAIM FOR RELIEF
(ADAAA – Punitive Damages)

52. The foregoing allegations are hereby re-alleged and incorporated herein by reference.

53. Defendant's actions in violating the ADAAA and plaintiff's rights under the ADAAA were done with malice or reckless indifference to plaintiff's federally protected rights.

54. On information and belief, defendant, including its employees Mr. Lewis and Mr. Youker, were aware of the ADAAA and that their conduct would violate the ADAAA and yet they proceeded to fire plaintiff with a reckless indifference to his rights or the fact that their conduct violated established law.

55. The decisions and actions by Mr. Lewis and Mr. Youker occurred within the course and scope of their employment in that they were fully authorized to hire, fire or otherwise affect the terms and conditions of plaintiff's employment. These individuals were managerial employees and managing agents of the store at which plaintiff worked and were acting at all times as agents of defendant.

56. The actions of Mr. Lewis and Mr. Youker in violating plaintiff's rights under the ADAAA are imputed to defendant, which is vicariously liable for the acts of these employees.

57. Plaintiff is entitled to recover punitive damages in an amount to be determined by the jury for defendant's intentional, malicious or reckless indifference to his federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays the Court as follows:

A. That plaintiff receive judgment against defendant in an amount to be determined at trial, but in excess of $100,000 for all compensatory damages for pecuniary and non-pecuniary harms, losses and damages, including without limitation that for emotional pain, suffering, mental, anguish, loss of enjoyment of life, damage to reputation, and any other applicable damages under law;

B. That plaintiff receive judgment against defendant in an amount to be determined by the jury for punitive damages as a result of defendant's intentional, malicious or reckless indifference to violating plaintiff's rights under the ADAAA;

C. That plaintiff recover from defendant all reasonable costs and expenses, including without limitation all expert witness fees, deposition costs, and attorney's fees as permitted by law;

D. That the Court grant injunctive relief directing that defendant reinstate plaintiff to his prior position and, further, that defendant provide plaintiff with reasonable accommodations and not otherwise violate the ADAAA;

E. That plaintiff receive such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TO TRIABLE.

HORNTHAL, RILEY, ELLIS & MALAND, L.L.P.

By: /s/ John D. Leidy
John D. Leidy
N.C. State Bar No. 14218
301 E. Main Street
Elizabeth City, NC 27909
Telephone No.: (252) 335-0871
Facsimile No.: (252) 335-4223
jleidy@hrem.com
*Attorneys for Plaintiff*

*J:\Clients\29227-0. E ph\Documents for Filing with Complaint\Complaint.docx*